Good morning, Your Honors. Therese Day for Appellant Robert Towery. With me are Dale Beige and Keith Hilzendegger. May it please the Court, I would like to begin today by addressing the questions presented in the supplemental briefing, and then we'll move on to discuss why this Court can and should apply equitable principles to the unique facts of Mr. Towery's case and find that he should be entitled to a new sentencing proceeding. An Eddings-Tenard heir like the one that occurred here is structural and therefore can never be harmless. In Mr. Towery's case, the Arizona courts refused to consider evidence that he was physically and emotionally abused by his mother as mitigating because he failed to demonstrate that this evidence was causally connected to the crime. The use of this type of unconstitutional relevancy test violates the Eighth Amendment requirement for an individualized sentencing determination, and by failing to give this powerful evidence proper consideration and full effect, the sentencer fails to make a reasoned moral judgment that is necessary to justify the imposition of the death penalty. Such an error affects the entire framework within which the sentencing trial proceeds and therefore is structural error. A reviewing court cannot substitute its own judgment for the judgment that the Constitution requires a particular decision-maker here, in Mr. Towery's case it was a judge, to make. Because of this, the United States Supreme Court has never applied harmless bear analysis to an Eddings-Tenard heir. This was acknowledged in the recent case of Nelson v. Quarterman, a Fifth Circuit case, where the court noted that where an inadequacy in the jury instructions deprived the jury from expressing its reasoned moral response to the defendant's mitigation and that because the United States Supreme Court had never applied harmless bear analysis, it would refuse to do so. In Lopez v. Ryan, this court held that it was required to demonstrate from the record clearly that this type of error occurred, and that's exactly what happened in Mr. Towery's case. From the trial record at sentencing, the sentencing court explicitly stated that during sentencing, a difficult family background in and of itself is not a mitigating circumstance. This is at ER 47. The court also noted that a difficult family background is only relevant if the defendant can show that something in his background affected his behavior at the time of the crime. Similarly, the Arizona Supreme Court on review affirmed the sentencing decision and found that because Towery failed to connect his family background to his criminal conduct, he was not entitled to relief. The court went on to find that the evidence presented at trial did not prove a loss of impulse control or explain what caused him to kill. In the case of State v. Hoskins, this principle was affirmed, and in that case, the Arizona Supreme Court cited to Towery for this principle. It cited it for the principle that it had long required a defendant to demonstrate a causal link between childhood abuse and the crime before a sentencing judge was allowed to even consider this evidence as mitigating. The court noted that when determining whether or not there is mitigation, the significant moment in time is the time at which the criminal acts are committed. The court explained if it did not apply such a nexus requirement, every defendant would be able to point to such evidence as a reason for leniency. The court then cited to the case of Towery for the principle that if a defendant fails to prove causation, the circumstance will not be considered mitigating. By applying such an unconstitutional relevancy standard, the court has changed what McCoy v. North Carolina, the Supreme Court case, has required in determining what is relevant for mitigation. Counsel, this is Judge Fisher. A question for you on if we don't look at Hoskins under our authority in Lopez, if we look to what was actually done and said in Towery sentencing itself, including particularly what the Supreme Court did in its independent review, how does that affect your argument? What is the clear indication in Towery in the Supreme Court that they were refusing to consider family background at all as a mitigating factor? We have included in the excerpts of record at page 47 the trial transcript where the sentencing court specifically stated on the record. Counsel, I asked you to address what the Supreme Court said. Oh, I'm sorry, Judge Fisher. You're telling me what the sentencing court said. We're reviewing the last reason decision, and I'm taking the Arizona Supreme Court at its word when it said we independently weigh the mitigating evidence. And I'd like you to address, without waiving any argument about what you may have from the sentencing court, please help us understand your argument as to if we look, as Lopez says we must, to the Arizona Supreme Court and what it actually said, taking away any gloss of an after-decided case such as Hoskin's, how does that affect your argument? Thank you, Judge Fisher. Yes, likewise, it's clear from the opinion of the Arizona Supreme Court in the language which is found at the opinion at 310 to 11. Because Towery failed to connect his family background to his criminal conduct, he was not entitled to relief. The court went on to state that the evidence presented at trial did not prove a loss of impulse control or explain what caused him to kill. And then the court went on to state that the judge considered the evidence and gave it little or no mitigating value. Counsel. But counsel, if we could. Sorry. Sorry, Judge Schroeder. Go ahead. I yield. I was pointing to a different passage which says we have held that a difficult family background is not always entitled to great weight as a mitigating circumstance. And we have since affirmed that it may be a substantial mitigating circumstance when there is some connection with the conduct. Now, doesn't that mean that they give it little weight but not that they ignored it? No, Your Honor. I do think that it is completely excluded. I think following that passage, it cites to State v. Wallace, which states a difficult family background is a relevant mitigating circumstance if a defendant can show that something in the background had an effect or impact on his behavior. And I think that when the court is saying that it can't have great weight, I think it means that it has great weight only when a causal connection is made. But isn't that logically, doesn't it make sense that if we consider it, we give it little weight if it doesn't seem at all to be related to the crime, that is to be in fact mitigated. And that we give it more weight if it does seem to be related to the crime and therefore mitigates the seriousness of the culpability with respect to the crime. Doesn't that make sense? I don't think it does, Your Honor. I think that the U.S. Supreme Court has been very clear that before you get to the weighing component in weighing states, the court must first, or whoever the sentencer is, the sentencer must first give constitutional consideration and full effect to mitigation. And only once it has done that may it then consider what weight it carries. And I think that the kind of nexus test that is occurring here in Arizona and what was applied at the time of trial and on review is exactly that. Because there was no connection made, the court gave it no weight, did not consider it as mitigating evidence. Thank you. Thank you, Judge Schroeder. Well, the very fact that I was going to, as did Judge Schroeder, was it seemed to me that the court, before it even gets into this kind of stuff, suggests we independently weigh the mitigating evidence against the aggravating circumstances to determine whether leniency is called for. Then it tries to make those weighings. And I appreciate your argument, but I guess I'm still having a tough time understanding why this is just not a weighing analysis the court undertook. I think what's happened in Mr. Tarry's case in particular is that the court is considering the nexus as part of the first step, if you will, if you will consider it a two-part process. The first is where a sentencer must first give constitutional consideration and full effect to mitigating evidence. And only then may they consider what weight it may carry. And I think that what's happened in Mr. Tarry's case in particular is that the court required there to be a nexus for it to have any weight whatsoever. And I think that's what violates the Constitution. Would you agree with what has happened? Are we okay? I'm not sure what that is. Yeah, I think there was some noise in the background somewhere. It says there's an incoming call. We can hear you. We're not going to answer the incoming call, whatever that is. I was focusing for a moment on Eddings itself. Eddings says that just as the state may not by statute preclude the sentencer from considering any mitigating factor, neither may the sentencer refuse to consider as a matter of law any relevant mitigating evidence. So your position, would you agree, has to be that the sentencer and the, more relevantly, I guess, the state Supreme Court, as a matter of law, refuse to consider this evidence as mitigating? That's correct, Your Honor. I know that there's been some confusion with cases about what exactly happened, but I think it's clear in Mr. Towery's case because in the opinion itself, where it talks about difficult family background and what weight it should carry, it specifically cites to State v. Wallace, which is the case that requires that nexus to be demonstrated before any weight can be given to something, and that's where the quote came from. I said in Wallace the court says a difficult family background is relevant only if the defendant can show that something in the background had an effect on his weight. But it doesn't really cite him for that proposition. It says it's not always entitled to great weight. And I think that Wallace was actually in full effect at the time that Towery was decided, and so in this case we do believe that that's exactly what happened. It's also in the trial record. Counsel, if your argument or your construction is correct, why would they say it is not always entitled to great weight? Why wouldn't they have said it is entitled to weight as a mitigating circumstance only? The locution that the Supreme Court has chosen is what is important. The fact that they cite Wallace in support creates some ambiguity, which you are understandably emphasizing. But the lead-in is we have held that a difficult family background is not always entitled to great weight as a mitigating circumstance, and the rest of that paragraph talks in terms of relevance relative circumstances, as Judge Schroeder pointed out. If you are trying to articulate as a weighing sentencer why, and explain to the defendant, why you didn't give the abusive child history weight, maybe even any weight, why is it inappropriate, if you've considered it, to say that we give it little weight, because it doesn't seem to have anything to do with the kind of murderous act that we are, and the aggravating factors that we are also weighing. Judge Fischer, I hope I can answer your question in its entirety. If I miss a part, please let me know. But I read the statement, we have held that a difficult family background is not always entitled to great weight, to mean that in Arizona, it's only entitled to weight if it's linked to the crime, and the stronger that connection is, the greater weight it's afforded. I'd also like to point out at the very beginning of the mitigating circumstances section of the Arizona Supreme Court opinion, which is two paragraphs before that at 310, the court states, the trial judge considered evidence of defendant's abusive family background and did not find mitigating value in it. So it found no value in the abusive background. It then goes down two sentences and says, although the judge rejected the evidence as a mitigating factor because he failed to establish a nexus between his family background and the crime, defendant argues that violated the law. But doesn't, Eddings doesn't require that everything be given substantial mitigating weight, does it? It just requires that you don't, as a matter of law, ignore it. I think it requires the sentencer to consider it in full and then give it weight. And I think what's clear from this opinion... Or no weight. Wouldn't you agree? Or no weight. I do agree with that, so long as it first fully gave consideration to that evidence. And here from the opinion we have, the Arizona Supreme Court acknowledging that the court didn't give it weight only because that nexus wasn't first established. And I think that's more clear from the second phrase I just offered. Did that answer your question in full, Judge Fischer? Yes, thank you. You're welcome. Judge Smith, did you have a question? No, I had no other question about that. Okay. We believe that because this error occurred in Mr. Towery's case, it affected the entire framework within which his sentencing proceeding occurred and is therefore structural. Therefore, we believe that Mr. Towery is entitled to a new sentencing proceeding. The next thing I would like to address is why, under the unique circumstances of Mr. Towery's case, it falls under the window left open in the Gonzales case, the U.S. Supreme Court opinion, that would allow this court to apply equitable principles to decide this claim. In Gonzales, the Supreme Court held that a 60B motion is properly raised where it addresses a defect in the integrity of the habeas proceedings. And at the opinion at 532, the court appears to recognize that there may be a circumstance where attorney error can actually create a defect in the integrity of the proceedings. We believe that given what happened in Mr. Towery's case, this court can look to the equitable nature of habeas corpus, even since post-Gonzales in the cases of Maples and Holland, where equity was used in the analysis to afford relief in both the context of procedural default and the statute of limitations under the ADPA. Counselor, would you agree with me, Counselor, that Holland v. Florida really stands for the idea that counsel should engage in egregious professional misconduct in order to meet what you're trying to do in this particular matter for a 60B motion? I do agree with that, Judge Smith, and I believe that that's exactly what happened in this case. If you do, thank you. And would you agree that Maples v. Thomas really says that it is that kind of a problem if, in fact, counsel leaves his client without any functioning attorney of record? I believe that that can be read to mean offensive abandonment, Judge Smith, and I think that's what happened in Mr. Towery's case. Well, I guess what I'm trying to figure out here is that it doesn't seem to me that you either allege egregious professional misconduct or that Towery was left without any functioning attorney of record. The best I can find with your allegations, that attorney may have been negligent in failing to raise a colorable claim. Thank you for pointing that out, Judge Smith. I would like to talk about the facts in this particular case because I think that it does lead to an effective abandonment by counsel. Well, wait a minute. Answer my question, please. Are your allegations either alleging an egregious professional conduct or do they allege that Towery was left without any functioning attorney of record? The latter, Your Honor. We're arguing that he was left effectively without counsel because counsel abandoned his case in regard to this particular claim. He was without counsel in that he just didn't raise one claim? If the court would indulge me for two minutes, I could give you a little bit of background about what exactly happened in this case. Yes, please. Okay. Thank you, Judge Smith. In Mr. Towery's case, habeas counsel was also his counsel during state PCR proceedings. Prior to his formal appointment on April 30th of 2003, he filed a preliminary petition for habeas corpus. And in it, he had said that because there was some confusion at that time to him and because of assertions that were made at the state that it may be an opt-in case, he chose to file his preliminary petition within an abbreviated timeframe. Importantly, when he did that, he specifically noted in his preliminary petition to the court that the constitutional claims set forth in this petition and the facts asserted are necessarily incomplete. Petitioner cannot assert in good faith, nor can he be required to, that all constitutional claims he intends to raise are contained in this petition because of the problem that was going on. On May 29th of 2003, he had his formal appointment from the court. And in that appointment, the court specifically directed him to file all known claims of constitutional error or deprivation entitling petitioner to federal habeas relief. The amended petition shall separately enumerate every claim for federal habeas relief. Then, in July of 2003, habeas counsel filed a motion for stay with the court. At that time, this court had decided that Summerlin was to be applied retroactively as far as the ring issue, two cases in Arizona, and it was taken up on cert. Habeas counsel also sought cert on behalf of Mr. Towery. He filed a motion for stay, and in that motion, he informed the court that should ring relief be granted, then any sentencing issues raised in Towery's federal habeas petition would be null and void. Therefore, it would be a waste of the court's resources to address any sentencing issues at that point until it knows what the Supreme Court of the United States will do. Habeas counsel noted that this was particularly important because of the fact that the preliminary petition was put together incompletely, and here he has asserted that also he planned on filing no habeas claims. In fact, the claims that he filed in his amended petition only included the claims that were filed in the preliminary petition, and no sentencing claims were included. And we believe that this is an effective abandonment of claims, especially when it involves a structural error that was clear from the record that would have entitled Mr. Towery to sentencing relief. Does that answer your question, Judge Smith? Well, it seems a little difficult for me to suggest that we have a clear problem with second or successive petition here. We have a Maynard presenting eight substantive claims of constitutional error, numerous distinct allegations of counsel ineffectiveness, an innocence theory based on previously untested crime scene evidence, and he goes all the way on that, and I'm defined that he abandoned counsel. I think he made it clear to the court that he abandoned his client. Sorry, that he abandoned his client. Correct, Judge Smith. And we are saying it is effective abandonment, mainly because of the assertions that he made to the court that he was not filing a petition that included all the claims that were necessary. And, in fact, it was clear from the direct appeal record that this claim had been properly raised at direct appeal, was ripe for review, and should have been included. This claim being what? This Tenard claim? The Eddings-Tenard claim was raised properly at direct appeal, and there was no reason not to include it. Well, but I thought you said that he was waiting for the ring issue to be resolved, because if that were resolved in favor of the inmates on death row, there would be new sentencing proceedings. That's correct, Your Honor. His stay was denied, however, so when he filed his amended petition in November, he should have included any sentencing claims he thought would prevail or that should have been included in a habeas petition, because the issue was unresolved at the time he was required to file that amended petition. I'd like to note, Your Honor, that district courts are not required to police habeas counsel, but the case of Ramirez might be instructive. And in Ramirez, I believe it was a 2002 case, Judge Kuehlberg was concerned about the quality of a traverse that was filed by habeas counsel, and he contacted the Office of the Federal Defender and brought them in to look, review the case anew and to file supplemental and amended pleadings. We feel in this case maybe something like that could have happened to ensure that, you know, a claim involving structural error that affected the entire sentencing proceeding would have actually been included in his petition, in Mr. Towery's petition. He had a right to that. I mean, the court was aware that counsel had not raised every claim, and in fact, following his denial of stay, he didn't alter his petition at all and included the very same claims that he said he had no time to raise during the preliminary petition. Counsel, does your position on abandonment and error depend on us agreeing with you that the Arizona Supreme Court decision in Towery was, in fact, clear and unequivocal violation of Eddings and Tenard? I believe it has to, Your Honor. Thank you. You're welcome. I'd like to reserve the remainder of my time, please. Thank you. May it please the Court, my name is John Anderson representing the State and Director Ryan. Our first issue would be that Gonzalez bars consideration of this second or successive petition. Gonzalez makes clear that the S.O.S. Rule in 2244 applies whenever the prisoner tries to raise a new claim in a second or successive petition, and that's what he's trying to do here. Towery has never alleged either of the 2244 exceptions, so this is barred under 2244. Even if this Court were to go to the old McCleskey test versus Ant, which has since been repealed effectively by the statute, McCleskey was the exact same situation where the prisoner tried to raise a Messiah claim in the second habeas petition. The Supreme Court in that case, concerned about the rule of finality, noted that Congress wasn't really very clear in the statutes about what to do with the S.O.S. petitions, but what it did was adopted the Coleman v. Thompson procedural default rules and applied them in the context of an S.O.S. petition, and it found no cause for prejudice where the Messiah claim had not been raised in the first habeas petition, and it specifically noted that it didn't require deliberate abandonment of the issue by counsel. It just required the state to show that it wasn't raised previously. Well, isn't the question here then really whether or not, assuming that there may be some cause, whether or not there was any prejudice, doesn't that go to the merits of the... Well, we believe first the only cause that could be asserted here that has been asserted here is abandonment under Maples, and as we've been discussing, there's clearly no abandonment under Maples because there was not a complete lack of counsel. Counsel represented him during the Rule 32. He went back and actually attempted to exhaust a DNA actual innocence claim, and state court was allowed to do that, and he raised no less than four claims on direct appeal, including there was only one certified issue. He raised three uncertified issues, and this court granted additional COA on two of the issues, so there's no cause, even if you could go back to the cause and prejudice test. Counselor? Judge Smith? Excuse me, but I asked you about the prejudice. Well, I agree, Your Honor. He has to show both cause and prejudice under McCloskey or any standard, and prejudice, I think, requires an analysis of the Eddings claim. If the Court wants me to do that, I'll go ahead and do that. As this Court has discussed, there's quite a bit of opinions from this Court on the Eddings rule, and one of the side issues here is whether Tenard even applies. We would argue that Tenard's not clearly established law. We agree with Judge Acuda's dissent in Williams, and we would also point out in Green v. Fisher, the Supreme Court has made clear that it has to be a precedent existing at the time of the Supreme Court. But moving on past that, ignoring whether or not Tenard or Eddings applies, this Court in Lopez v. Ryan clearly addressed the standard. It said that Arizona did not have a general rule, and you have to assume that the Arizona courts did the right thing. As a matter of fact, Lopez specifically cites Towery in the footnote 630F, 1204 footnote 4, and specifically cites this case. Towery is one of the cases where the Arizona Supreme Court got it right. Looking to end what Lopez, Shadd, and Greenway, the more recent decision requires, if this Court looked at what the Arizona Supreme Court's last recent decision did, I would point to no less than six statements in the Arizona Supreme Court putting aside that they're presumed to have done the right thing. There's six different statements that show that they actually waited. First it says, we independently wait. That's the opening paragraph. The second statement is that the trial court considered the evidence and did not find mitigating value in it. The third is in another paragraph. It's talking about Penry, and it says, the sentencer must give the evidence such weight that the sentence reflects a reasoned moral response. The sentencer must consider the defendant's upbringing and proffer, but is not required to give it significant mitigating weight. How much weight to be given the evidence is a matter within the sound description of the trial court. We have held that a difficult family background is not always entitled to great weight. We have sentenced to affirm that family background may be a substantial mitigating circumstance when it is shown to have some connection. And finally, it concluded, the trial judge considered this background and gave it little or no mitigating value. We would argue that that clearly shows compliance with headings. Well, how do you explain this State Supreme Court subsequent citation of it? Well, in Hoskins, I think this Court's jurisprudence is to look at what the Court did in a particular case, and I think that wouldn't be a clearly unreasonable application based on a parenthetical string citation in another case. But if you actually look at Sansing, just a section I'll try to convert, the Arizona Supreme Court found in Sansing, 26p3, 1129, 1130, the sentencing judge properly considered the defendant's difficult childhood as a non-statutory mitigating circumstance and gave the evidence appropriate weight. So even in Sansing, despite what, in the other language about what test, if you look at the actual facts of the case, that wasn't a misapplication of headings either because it noted that the sentencing court gave it appropriate weight. And if you look at, you can't just look at Hoskins, you have to look at all the Arizona Supreme Court opinions. If you look at Sansing, for instance, which is cited by Cowery, it's cited by Cowery three different times, and for the proposition, this is 26p3 at 1129-1130. The sentencer must consider, but is not required to give it significant mitigating weight. Secondly, however much weight should be given proper to mitigating factors is a matter within the sum discretion of the sentencing judge. The third citation, family background may be a substantial mitigating circumstance. So if you look at those decisions, I mean, and you'd have to look back to all the Arizona Supreme Court decisions to see if there was actually any sentencing error. I mean, I can go back and discuss the entire history of Arizona's Lockett and Eddings, particularly the Arizona Supreme Court after Lockett. They had to change the statute. 13702G requires consideration of mitigating circumstances. That's the opposite of what happened in Eddings where the sentencing court said, I have a state rule that doesn't allow me to apply it. When was that statute passed? I think it was 82. It was right after. It was almost the same year as Lockett. There's an Arizona case called Stake v. Watson. I don't know the citation, but it noted that Arizona's previous death sentences were violated Lockett because Arizona only allowed consideration of statutory mitigating circumstances. And then it was the statute was then changed. If you look at the post Lockett and Eddings opinions, I can cite a few for the court. Stake v. McMurphy, which is 664P2 637, talks about Eddings and Lockett. Gretzler 659P2 1 talks about Eddings. And Stake v. Valencia was a case 645P2 639, where it is on the Supreme Court, actually reduced the sentence to life. So I think one other point I want to discuss, the citation of Stake v. Wallace and the Arizona Supreme Court's opinion, what they actually cite Wallace for is we have held that a difficult family background is not always entitled to great weight. So even in that citation, they're applying the proper test. I hope the court doesn't get that far and doesn't think it needs to get that far. But we would argue that prejudice applies in this case, as Ted Schroeder has pointed out, even under the SLS McCleskey standard, you have to show some prejudice. So and that the proper analysis would be the Brecht standard, because this is precisely the kind of error that can be subjected to harmless error analysis. It's an exclusion of evidence. And that's under Sullivan v. Louisiana. That's the kind of evidence where you can either look at excluded evidence or evidence that was improperly admitted and either admit it or take it out and consider whether the rest of the evidence shows that it wasn't harmful. As a matter of fact, this court in Landergan v. Stewart, 272 F. Third, 12.1, actually applied that standard. And it said that at any rate, any error in feelings, consider Landergan's use of alcohol and drugs would have been inconsequential and would have had no effect whatsoever on the outcome. That's 272 F. Third at 1230 foot nine. Nelson v. Quarterman had his one court's opinion on the harmless error test. It noted that the state didn't raise it timely and it raised it in a one page argument. So not particularly thorough briefing by the court. And I've noted in my supplemental authority that the Fifth Circuit supplied the harmless error test in another case. And other circuits have certainly applied the harmless error test to block it, adding to our type error. And this is very similar to ineffective assistance at sentencing, where the courts always engage in a prejudice analysis. In fact, the supplemental brief by Cowrie cites to Wiggin, which is an ineffective assistance case. And if you look to the analysis in those ineffective assistance cases, some of the factors are, you know, are there other other effective aggravating circumstances? In this case, there were four aggravating circumstances. And Cowrie doesn't contest. It was a pretty brutal crime. And Arizona courts have never given much weight to difficult childhoods when there's a significant time period between the crime and the defendant, the end of the defendant's childhood. And I've cited Hampton and Kyle's in the brief for that. Mr. Cowrie is 27 when he committed the crime. Arizona courts actually say we give it little weight. So even if you view the Arizona Supreme Court as not having given it weight, still a statement that it would give it little weight shows that it wouldn't have given it much weight if it was, if it felt free to give weight to it, which we argue that it did give weight to it. I don't really have anything else to say unless the court has more questions. Counselor, I do have a question. This is Judge Smith. As I understand it, this motion was brought under a 60B6 rule. That's correct, Your Honor. And under that rule, it's my understanding that the standard to review is abuse of discretion? Well, I think Gonzales makes very clear that Rule 60 has to be considered with the habeas statutes. And so the extent that they conflict with the habeas statutes, you apply it in 2244 and don't apply the Rule 60 analysis. I think it would be an abuse of discretion standard, assuming that it is just a straight Rule 60B6 motion outside the habeas context. I would agree with that. But 60B6 requires extraordinary circumstances for one thing. And counsel raising some arguments and not others is hardly an extraordinary circumstance. In fact, it happens in every single habeas case. Counsel in habeas proceedings raises some arguments and not others. In this case, he raised eight claims in the district court, and he raised four in appeal. So not extraordinary circumstances at all under 60B6. I guess what I'm trying to get to, do I owe any deference to the district court's decision here? I think the standard is abuse of discretion, but assuming that it's just a straight legal question, I think the result is the same. So I don't think the standard matters, but the general lie is that the district court is given some discretion in its rulings. Well, I guess my worry here is that we have a 60B motion, and I understand that it's in a habeas case, and therefore I understand that it requires the moving party to make a showing of extraordinary circumstances. But in those situations, do I give discretion to the district court in determining whether there's extraordinary circumstances? Well, I think I understand your question now, Your Honor. I guess when you're looking at the extraordinary circumstances that are presented to the district court, the allegation of extraordinary circumstances, that this Court should give deference to the district court saying whether the circumstances are extraordinary or not. And in this case, they're certainly not extraordinary circumstances, but rather ordinary circumstances. Go ahead. What did the district court say? The district court said, actually, if I can pull it up. This is contained in the excerpt of records at 3. First, it talks about Gonzalez. It says Petitioner is seeking relief based on 60 B.C., and it says even assuming negligent performance. It talks about that. It says Petitioner has not demonstrated that, and it's talking about whether negligent performance or abandonment, I guess, could rise to the level of 60 B.C. Has not demonstrated that habeas council performance descended to a level where Petitioner was abandoned and deprived of an opportunity to be heard here at 6. And so basically, even though the decision came out before Maples, it certainly anticipated Maples and says that there was an abandonment. So the underlying issue is really the same as in the S.O.S. Yes. I mean, if I perceive your question correctly, it's yes, I mean, unless. OK. I think I've covered everything that I intended to have any further questions. Any further questions? My colleagues, there don't seem to be anything. This day, you have about five minutes. Thank you, Judge. First of all, in addressing what the standard to be applied is, I think that because this involves an air of law, just like in addressing whether it's a successful petition, this court can review it de novo. Well, but just a minute where you brought this motion under a 60 B.C. If I review 60 B.C. motions de novo, I don't find any precedent for that any place. Thank you, Judge Smith. I do think that the court is. I'm glad to hear it. It's my understanding that when the court is determining airs of law, they can review the issue de novo. And I may be incorrect about that, Judge Smith. Well, if I understand your. Go ahead. If I understand. Go ahead. Go ahead, Judge Schroeder. Judge Schroeder, I'll defer again. Well, if I understand what you're arguing, you're arguing that it's the question on the merits as to whether or not there's a viable claim that was not made that should be heard now. That would be a question of law. I think whether deciding. Oh, sorry. Yes. So therefore, if that would be a question of law, then it would be. There would be extraordinary circumstances if that existed. So the district court uses discretion saying there were no extraordinary circumstances because there are extraordinary circumstances in that there's a valid claim here as a matter of law. Correct. OK. Well, I really don't accept Judge Schroeder's characterization of my particular situation here. Frankly, I have a 60 v. 6 motion. I can understand if one does not apply the appropriate law. Then, of course, it's an abuse of discretion. But I also understand that if one is just making a factual determination or making a determination under 60 v. 6, that this is a discretionary decision by the district court. And I'm still trying to figure out the precedent which would suggest it is otherwise. Because a 60 v. 6 motion even brought is the least of the motions under 60 v. 6. In fact, they're granted rarely. Thank you, Judge Smith. I just want you to respond if you could. I was just trying to make the best of the argument. Thank you, Judge Schroeder. All I can say is my argument is exactly as enunciated by Judge Schroeder. And I defer to the court in what they decide the standard is in issuing their opinion. I did want to just point out a few things based on opposing counsel's argument. First of all, once Summerlin was decided, there was nothing at that time that prevented habeas counsel from going back and amending the petition to include sentencing-related claims. Furthermore, in Eddings, and I think I may have misspoke in my initial argument, Judge Schroeder, but Eddings says that a sentencer cannot give no weight once the sentencer considers the evidence. So the fact that the court here did consider it and then ended up giving it no weight is a violation of Eddings. And where is that? That's at 115 in the opinion of Eddings. Thank you. You're welcome. Furthermore, well, it says, but they may not give it no weight by excluding such evidence from their consideration. Correct. Okay. And then counsel referred to a lot of opinions in Arizona, citing Terry one way or the other. I think that what matters is what happened on the record here. That's clear from Lopez v. Ryan, that it has to be the record in the particular case. I think the fact that the state is able to point to, and anyone can point to multiple cases going either way, goes to the fact that this kind of causal nexus test creates a lot of confusion in how courts are supposed to treat it. And that's all that's reflected in those cases. Another thing is that this court in U.S. v. Lopez talked about McCluskey. And I think that opposing counsel said McCluskey, the whole idea of a court having discretion to use equity is incorrect. I think that the doctrine of the abuse of the writ survived ADPA, and this court can apply equitable principles to consider the claim. And then one final point is I don't believe that Tenard addressed new law. Tenard merely reaffirmed what the law was at the time of Mr. Towery's sentencing in Eddings and Lockett and the other cases. Thank you very much. Are there any further questions of the Petitioner's counsel? No, thank you. We're close to the argument. Yes, we appreciate the arguments presented. The matter will be taken under submission, and the court stands adjourned. May I ask our technical assistant who's in the room, are we planning to confer after the courtroom is cleared? Here. All right. So the court stands adjourned, and we'll clear the courtroom and convene for conference. Thank you.
judges: Schroeder, Fisher, Nr Smith, Cjj